BROCKTON SAVINGS BANK *vs.* ISAAC SHAPIRO & others.

Suffolk.     April 10, 1942. — June 22, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Mortgage,* Conveyance subject to mortgage. *Contract,* Assumption of mortgage. *Surety. Savings Bank. Evidence,* Competency. *Deed,* Consideration. *Practice, Civil,* Exceptions: what questions open.

In an action by a savings bank against a mortgagor of real estate for a deficiency remaining after a sale in foreclosure of the mortgage, where the mortgagor had conveyed the equity of redemption and contended that the grantee had agreed with him to assume and pay the mortgage note, that the bank without the mortgagor's consent had made an agreement with the grantee for an extension of the note and that the value of the property had depreciated between the time of the extension and the time of the foreclosure, evidence was admissible in the discretion of the judge of appraisals made by the bank's board of investment under G. L. (Ter. Ed.) c. 168, § 54, First, as amended by St. 1937, c. 180, five years and five months and two years and eight months before, and about five months after, such extension.

At the trial of an action by a savings bank, payee of a note secured by a mortgage of real estate, against the mortgagor for a deficiency following a sale in foreclosure, an issue, whether a grantee of the mortgagor had assumed and agreed with the mortgagor to pay the mortgage debt, properly was submitted to the jury upon evidence that the bank knew of the conveyance, that, after the conveyance, all payments of interest to the bank upon the note had been made by the grantee and the loan was stated on certain of the bank's records

as being to the grantee, and that at some time a notation had been made upon the note that it had been assumed by the grantee.

Certain instructions to a jury, relating to an issue whether a grantee of an equity of redemption from a mortgage had assumed and agreed with the mortgagor to pay the mortgage debt so that the mortgagor became surety and the grantee the principal debtor, constituted error in view of the state of the evidence.

Upon the evidence at the trial of an action by a mortgagee against a mortgagor of real estate for a deficiency after foreclosure, where the defendant contended that he had conveyed the equity of redemption to one who had assumed and agreed with him to pay the mortgage debt, that the plaintiff had without his consent made an agreement with the grantee for an extension of the note and that his right as consequent surety had been impaired because of a depreciation in the value of the mortgaged property during the period of the extension, there was no error in a refusal to instruct the jury as a matter of law that the right of the defendant was unaffected by the extension agreement.

CONTRACT. Writ in the Municipal Court of the City of Boston dated April 5, 1939.

On removal to the Superior Court, the action was tried before *Dowd*, J.

*W. P. Murray*, (*M. J. Zieman* with him,) for the plaintiff.

*S. B. Stein*, for the defendants.

RONAN, J. This is an action of contract to recover the balance alleged to be due on a promissory note of the defendants dated March 15, 1926, for $100,000, payable in five years to the plaintiff and secured by a mortgage upon certain real estate in Brookline. The jury found for the defendants. The case is here upon the plaintiff's exceptions taken to the admission of the appraisals of the board of investment of the plaintiff and to portions of the instructions to the jury.

The property was transferred to the Williamsons on July 8, 1926, by a quitclaim deed which recited that the conveyance was made subject to the mortgage. One of the defendants, Shapiro, testified that the property was sold to Adam and Annie Williamson for the price of $135,000. There was an entry upon the back of the mortgage note where, after the printed words "Assumed by," there was typewritten the words "Adam and Annie Williamson," but there was no direct testimony as to when these names were

put upon the back of the note other than it was "sometime after July, 1926," after the Williamsons had purchased the property — a fact which the plaintiff learned in 1926. The Williamsons, hereinafter called the grantees, entered into a written agreement with the plaintiff on April 15, 1937, whereby the rate of interest on the mortgage note was reduced and the time for payment extended to September 1, 1939. The grantees agreed to pay the interest on the note, the taxes and insurance upon the mortgaged premises, and to pay the note on the last mentioned date. The agreement also contained this provision: "Be it expressly understood and agreed that nothing herein contained shall be construed to impair the security of said Bank, its successors and assigns, under said mortgage, nor affect, nor impair any rights or powers which it may have under the said note and mortgage for the recovery of the mortgage debt, with interest, in case of nonfulfillment of this agreement by said Equity Owners." The mortgage was foreclosed on February 24, 1939, but the proceeds from the foreclosure being insufficient to pay the note, the plaintiff brought this action of contract against the defendants to recover the balance amounting to $34,154.47. The jury in answer to a question submitted to them found that the grantees had assumed and agreed to pay the mortgage and that the mortgaged realty had depreciated $5,000 in value between the date of the extension agreement and the date of the foreclosure sale.

The only exception to evidence relates to the admission of the appraisals of the value of the mortgaged property on November 12, 1931, August 9, 1934, and September 28, 1937, by the board of investment of the plaintiff. The board was authorized by G. L. (Ter. Ed.) c. 168, § 54, First, as amended by St. 1937, c. 180, to revalue premises upon which the bank held a mortgage and to file its statement of value with the records of the bank. The plaintiff was charged with notice of these statements, *Walsh* v. *Lowell Trust Co.* 245 Mass. 455; *New England Trust Co.* v. *Bright,* 274 Mass. 407, and these representations of the board made in the performance of its duties were admissible in evidence. *Augello* v. *Hanover Trust Co.* 253 Mass. 160. *Schleifer* v.

*Worcester North Savings Institution,* 306 Mass. 226. The earlier appraisal would appear to be remote upon the valuation of the mortgaged premises upon the date of the extension agreement, but the matter rested to a large extent, but not entirely, in the sound discretion of the judge. *Commonwealth* v. *Abbott,* 130 Mass. 472. *Jenkins* v. *Weston,* 200 Mass. 488. *Arabia* v. *John Hancock Mutual Life Ins. Co.* 301 Mass. 397. There was no reversible error in the admission of these appraisals.

One of the issues at the trial was whether the grantees had agreed with the defendants to assume and pay the mortgage debt. The plaintiff excepted to the judge permitting the jury to pass upon the question whether the grantees had assumed the mortgage at the time of the conveyance to them. The plaintiff knew in 1926 that this conveyance had been made. All payments of interest upon the mortgage note subsequent to the conveyance were apparently made by the grantees. The appraisal made by the plaintiff's board of investment on November 12, 1931, was captioned "Loan No. 2346 Brockton Savings Bank Name. Adam Williamson et ux." The loan number was the same number as that of the loan made to the defendants. We think that with this background a jury under appropriate instructions could reasonably infer that the entry on the back of the mortgage note referred to an assumption of the mortgage debt by the grantees when they purchased the property, and could consider the entry as an admission of this fact made by the bank upon its records in the usual course of business. The issue was properly left to the jury. *City Institution for Savings* v. *Kelil,* 262 Mass. 302. *Chadwick & Carr Co.* v. *Smith,* 293 Mass. 293.

Various exceptions were taken to portions of the charge dealing with the issue of the assumption of the mortgage debt by the grantees wherein the jury were told that the grantees paid $135,000 for that property; that, if the deed alone is considered, the grantees simply acquired the equity of redemption; that, regardless of what was contained in the deed, the jury were to consider the conduct,

the relationship and actions of the grantees with reference to whether or not they assumed the mortgage and agreed to pay it; that the jury had the mortgage note with the indorsement on the back of it; that there was testimony "that whatever the amount was the grantee[s] assumed and agreed to pay with the bank," and that "you also have the grantee[s] paying the interest on the mortgage." The jury were also instructed that if the grantees did not assume the mortgage there was no responsibility on them in law to pay the interest, because if they did not assume the mortgage, the mortgagors were obliged to pay the interest; that by their conduct the grantees paid $135,000 for the property; and that, by the evidence and the mortgage note, "you may take it for what it is worth, whether it was put there soon or late, it is for you to determine, but it is there, the fact that they assumed this note and mortgage and paid the interest on that mortgage up to foreclosure." These instructions were erroneous.

The plaintiff did not concede that the grantees had paid $135,000. The testimony of Shapiro that the property was sold for "the price of $135,000" was not binding upon the plaintiff. Neither were the jury required to believe it. But this testimony, which was all the evidence there was concerning the price paid for the conveyance, is uncertain and ambiguous. It may mean that the grantees paid $135,000 in cash for the equity of redemption, or that the property was sold upon the valuation of $135,000 and that they paid the difference between this amount and the amount of the mortgage, or that something was paid in cash and the balance of the consideration was some executory promise of the grantees to assume some obligation of the defendants which they had incurred in connection with the property. The deed, as the jury were correctly instructed, conveyed the equity of redemption and its acceptance by the grantees would not impose any personal liability upon them to pay the mortgage debt. *Fiske* v. *Tolman*, 124 Mass. 254. *Pratt* v. *Buckley*, 175 Mass. 115. *North End Savings Bank* v. *Snow*, 197 Mass. 339. *Phillips* v. *Vorenberg*, 259 Mass. 46. *Brown* v. *Kaplan*, 302 Mass. 510.

The deed made no mention of the consideration other than the phrase "for consideration paid." It was open to the defendants to show specifically what was the actual consideration for the conveyance. *Drury* v. *Tremont Improvement Co.* 13 Allen, 168. *Bray* v. *Hickman,* 263 Mass. 409. *Flynn* v. *Kenrick,* 285 Mass. 446. *Rhoades* v. *Secunda,* 296 Mass. 1. *McRae* v. *Pope, ante,* 500. The consideration for the deed was a question of fact. The defendants knew the terms of the sale and if, as they contended, the grantees in accordance with these terms assumed the mortgage debt, then the burden was upon the defendants to prove that fact by evidence sufficiently definite to establish it. The uncertain and ambiguous statement of Shapiro was insufficient to require a finding that the grantees as a part of the consideration had assumed the mortgage debt. An obligation by a grantee to assume and pay a mortgage debt is not to be lightly implied where the deed conveys the property subject to the mortgage. *Fiske* v. *Tolman,* 124 Mass. 254. *Phillips* v. *Vorenberg,* 259 Mass. 46. *Equitable Life Assurance Society of the United States* v. *Bostwick,* 100 N. Y. 628. *Smith* v. *Cornell,* 111 N. Y. 554.

The payment of interest by the grantees may have been just as consistent with a purchase subject to the mortgage as with one by which they assumed and agreed to pay the mortgage debt. The mere payment of interest on a mortgage note by one who became the owner of the real estate upon which the mortgage was an encumbrance does not create any personal liability upon him to pay the mortgage debt. Of course, it is true, as the jury were instructed, that the grantees were under no obligation to pay the interest if they had not assumed the mortgage debt, but it is equally true, although no mention was made of it to the jury, that if they bought subject to the mortgage they were required as a practical matter to pay the interest if they desired to avoid a foreclosure of the mortgage. The matter should not have been left to the jury in such a way as to create an implication that the grantees assumed and agreed to pay the mortgage debt from the fact that they paid the interest. The fact that the purchaser pays "the

interest on the incumbrance is not inconsistent with his not having assumed the payment of the incumbrance. As owner of the property subject to the incumbrance, and desirous of retaining it so long as there was any value in the equity of redemption, he would naturally pay the interest to save a foreclosure." *Elliott* v. *Sackett,* 108 U. S. 132, 142. *Metropolitan Bank* v. *St. Louis Dispatch Co.* 149 U. S. 436, 447. *Provident Institution for Savings* v. *Merrill, ante,* 168, 169–170. *Macfarland* v. *Utz,* 175 Ill. App. 525. *Mc-Farland* v. *Melson,* 323 Mo. 977. *Hulin* v. *Veatch,* 148 Ore. 119; 94 Am. L. R. 1319.

The notation upon the back of the note was no evidence that the grantees had assumed and agreed to pay the mortgage debt unless it referred to a relationship that arose out of an arrangement made between the defendants and the grantees with reference to the conveyance of the property. The defendants contended that, by virtue of that arrangement, they had become sureties and that the plaintiff, having knowledge of that fact, gave the grantees an extension of time for payment of the note. In other words, the defendants cannot complain unless they became sureties before the extension was granted. Their relationship as sureties to the grantees was not created by the extension. The evidence as to when this notation was made has already been stated. There was error in permitting the jury to consider this notation "for what it is worth, whether it was put there soon or late," and they should have been instructed that they could consider it only if they found it referred to the terms of the conveyance between the defendants and their grantees, and not if it was merely a record of the assumption of the mortgage debt by the grantees in executing the extension agreement. The relationship of principal and surety between the defendants and their grantees, if it ever existed, arose out of the dealings between them and not out of any arrangement between the plaintiff and the grantees. *Codman* v. *Deland,* 231 Mass. 344. Compare *Shepherd* v. *May,* 115 U. S. 505. The charge permitted the jury to infer that the notation on the back of the note was evidence of the assumption of the mortgage debt by the

grantees although the notation might have referred only to the extension agreement.   There was error in refusing to limit the application of this evidence to whatever bearing it may have on the terms of the conveyance from the defendants to the grantees.   *Commonwealth* v. *Shepard,* 1 Allen, 575.   *Commonwealth* v. *Perry,* 248 Mass. 19.   Wigmore, Evidence, § 13.

We need not consider the other exceptions to that portion of the charge relating to the assumption of the mortgage as they are not likely to arise at the next trial.   If the grantees acquired only the equity of redemption, then the defendants, by virtue of the extension, were not discharged from all personal liability, but they were released only to the extent of the then value of the land.   *North End Savings Bank* v. *Snow,* 197 Mass. 339.   *Silverstein* v. *Saster,* 285 Mass. 453.   *Brown* v. *Kaplan,* 302 Mass. 510.   The question whether the special finding determining that the damage amounted to $5,000 — which was much less than the balance on the note — was inconsistent with the verdict for the defendants is not open.   See *Worcester Mechanics' Savings Bank* v. *Thayer,* 136 Mass. 459; *Silverstein* v. *Saster,* 285 Mass. 453, 457; *Lynn Five Cents Savings Bank* v. *Portnoy,* 306 Mass. 436.

The plaintiff finally contends that its rights against the defendants were reserved by it in the extension agreement, and that it was error to instruct the jury that the plaintiff had no right to extend the mortgage without the consent of the defendants and not also to instruct them in accordance with the plaintiff's request that such consent was not necessary if the defendants' rights were unaffected by the extension agreement.   The defendants as a result of the conveyance had become, as between themselves and their grantees, quasi sureties with the land as the principal or actual sureties to the grantees, who became the principal debtors, depending upon whether the latter had purchased subject to the mortgage or had assumed and agreed to pay the mortgage debt.   *Fiske* v. *Tolman,* 124 Mass. 254.   *Codman* v. *Deland,* 231 Mass. 344.   *Phillips* v. *Vorenberg,* 259 Mass. 46.   *Johnston* v. *Cassidy,* 279 Mass. 593.

The mortgagors could not avoid their liability upon the note by making the conveyance in either form, but if the bank knew and recognized the relationship between the parties that arose out of the conveyance it could not so deal with the grantees as to impair or interfere with the rights that the mortgagors had against them. *City Institution for Savings* v. *Kelil*, 262 Mass. 302. *Conway Savings Bank* v. *Vinick*, 287 Mass. 448. Am. Law Inst. Restatement: Security, §§ 114, 128.

A creditor may, with the consent of the surety, grant the principal debtor an extension of the time of payment or change the conditions under which a loan was made; or he may, in the absence of such consent, make such an agreement with the principal debtor if the creditor reserves all rights against the surety so that the agreement does not operate as absolute and final upon the liability of the surety, but, rather, operates as a qualified and conditional suspension of the remedies that the creditor expressly retains against the surety. In other words, such an agreement with the principal debtor is valid if it is subordinated to the continuance of the right of the creditor to pursue all his remedies against the surety at any time during the agreement with the principal debtor, and where the creditor remains able at all times upon the payment of the debt by the surety to put him in a position where his right to subrogation against the principal debtor has not been impaired or destroyed. An extension so limited as not to prejudice the rights of the defendants could have been given. *Sohier.* v. *Loring*, 6 Cush. 537. *Federal Trust Co.* v. *Central Trust Co.* 244 Mass. 204. *Taborsak* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 8. *B. M. C. Durfee Trust Co.* v. *Steiger*, 296 Mass. 136.

The question here is whether the rights of the defendants were harmed by the agreement. The extension was a valid and enforceable agreement between the bank and the grantees and the bank could not terminate it before September 1, 1939, if the grantees observed its terms. Its operation was conditional upon the "nonfulfillment of this agreement by said Equity Owners." If the defendants paid

the note at any time during the period of the extension agreement they could not enforce it by a sale of the land or against the grantees because the note would not become due until September 1, 1939, even though, as the jury found, the security was diminishing in value. The effect of the extension was necessarily to suspend the rights of the defendants during the interval. There was no error in the refusal of the judge to instruct the jury that the rights of the defendants were unaffected by the extension agreement. *Appleton* v. *Parker*, 15 Gray, 173. *Maglione* v. *Penta*, 266 Mass. 413. *Taborsak* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 8. *Albee* v. *Gross*, 250 Ill. App. 98. *Calvo* v. *Davies*, 73 N. Y. 211. *National Park Bank of New York* v. *Koehler*, 204 N. Y. 174. *Metzger* v. *Nova Realty Co.* 214 N. Y. 26. *City Bank Farmers Trust Co.* v. *Slowmach Realty Corp.* 238 App. Div. (N. Y.) 524; affirmed 263 N. Y. 544. *Maier* v. *Thorman*, 234 S. W. (Texas) 239. *Lockhart* v. *Hardy*, 9 Beav. 349. *Palmer* v. *Hendrie*, 27 Beav. 349. *Rudge* v. *Richens*, L. R. 8 C. P. 358. *Walker* v. *Jones*, L. R. 1 P. C. 50. Am. Law Inst. Restatement: Security, § 129.

*Exceptions sustained.*