JAMES W. SKILLINGS *vs.* ALFRED A. MARCUS & another.

Suffolk.    January 27, 1893. — May 16, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Note taken by Purchase or as Collateral — Written Agreement — Composition
Proceedings — Liability of Indorser.*

A written agreement recited that A. had received of B. a note of C. amounting to
$1,750, and that when the note was paid A. was to convey to B a certain lot of
land, "credit to be given of $1,075." In an action on the note by A. against B.,
who was an indorser, A.'s oral evidence tended to show that he took the note
by purchase for $675, and B.'s that A. took it as collateral. *Held*, that the rul-
ing that the written agreement showed conclusively that A. took the note by
purchase was erroneous, and that the agreement was not inconsistent with B.'s
contention that the note was taken as collateral.

The discharge of the maker of a note under composition proceedings does not cut
off the holder's claim against the indorsers.

CONTRACT on a note for $1,750, signed by one Horace S.
Shepard and indorsed by the defendants.

At the trial in the Superior Court, before *Mason*, C. J., the
plaintiff introduced evidence tending to show that one of the
indorsers came to him with the note in suit, and he purchased it
from him for the sum of $675, the plaintiff giving his checks
therefor; that, as the defendant was going away, having received
the checks for the $675, the plaintiff spoke to him about pur-
chasing some land from him (the plaintiff), and thereupon the
parties entered into the agreement given below; that the agree-
ment and the purchase of the note were separate transactions;
and that subsequently the maker of the $1,750 note went into
composition proceedings in insolvency, the plaintiff proving the
note against the maker's estate, and assenting to his composition
and discharge, and the plaintiff received fifteen cents on a dollar.
The following is a copy of the agreement:

" Boston, May 16, 1889. Received of Alfred A. Marcus &
Son a note of H. S. Shepard amounting to $1,750, payable six
months from May 1, 1889; when the note is paid, I agree to
convey to Alfred A. Marcus & Son a certain lot of land on
Strawberry Hill, about sixty thousand feet, the same as was

conveyed to me by the trustee of the Nantasket Land Company, for what I paid six thousand dollars. Land to be conveyed to said Marcus subject to first mortgage, $3,750 ; when note is paid, credit to be given of $1,075. J. W. Skillings. Alfred A. Marcus & Son."

The defendants introduced evidence tending to show that one of the defendants went to the office of the plaintiff with the note in suit, and borrowed from the plaintiff on the note the sum of $675 ; that he did not sell the note to the plaintiff ; that the $675 was a loan to the defendant ; that the agreement annexed was made contemporaneously with the loaning of the $675 and as part of the same transaction ; and that Skillings afterwards proved the note in composition proceedings against Shepard, and assented to the same and to his discharge, and Shepard received his discharge, May 7, 1890. The defendants on the above evidence requested the judge to rule as follows :

" 1. Upon the evidence, it was a question for the jury to say whether the plaintiff purchased the note outright for $675, or whether he simply loaned and the defendants borrowed $675 on the note, and that if the plaintiff did not purchase outright the note, but only loaned $675 on the note (if he was entitled to recover at all), then he could recover only the $675 and interest, less the amount received from Shepard. 2. The plaintiff having proved his claim against the maker of the note in suit in the composition proceedings of the maker, and assented to his discharge, he (the plaintiff) thereby released the maker of the note, and the indorsers on the note were discharged. 3. The plaintiff having assented to the discharge of the maker of the note in composition insolvency, the indorsers are released. 4. If a creditor holding a note like the one in suit proves the note against the maker, and assents to the composition offer and discharge of the maker in composition insolvency under our statutes, the indorsers are thereby released by the act of the plaintiff or creditor, and the plaintiff or creditor cannot recover against the indorser. 5. The release of the maker of the note in suit by the plaintiff would discharge the indorsers (the defendants here). 6. The signing of the assent to the composition offer and discharge of the maker of the note in suit, by the plaintiff, is such an act as discharges the defendants in this

action.   7. The Pub. Sts. c. 157, § 85, do not apply in compo-
sition proceedings under the statutes of 1884 and 1885, and there-
fore do not apply to the case at bar.   8. Upon all the evidence,
the plaintiff is not entitled to recover."

The chief justice refused so to rule, and ruled that there was
no evidence for the jury, and that the only question for the jury
was to find the difference between the face of the note and in-
terest, and the amount received from Shepard, and that for that
difference the plaintiff was entitled to recover; and thereupon
directed a verdict for the plaintiff for the face of said note and
interest, less the amount received from Shepard.

The defendants alleged exceptions.

The case was submitted on briefs to all the judges.

*C. F. Eldredge*, for the defendants.

*F. Joy*, for the plaintiff.

ALLEN, J.   The plaintiff's oral evidence tended to show that
he took the note by purchase, and the defendants' oral evidence
tended to show that he took it as collateral.   So far as the oral
evidence was concerned, it was clearly a question for the jury.
The ruling, therefore, must have been on the ground that the
written agreement showed conclusively that the plaintiff took
the note by purchase.   We are unable to see that it has this
conclusive effect.   The plaintiff paid to the defendants $675, and
took from them Shepard's note for $1,750.   Upon this note
Shepard was primarily responsible, and the defendants were
indorsers and responsible secondarily.   It was for the interest of
the defendants that the money should be collected from Shepard.
If the note should be paid by Shepard, the plaintiff would have
in his hands $1,075 more than his payment to the defendants.
Under this state of things the written agreement was executed.
It may be assumed to have been so nearly contemporaneous with
the transfer of the note as to be part of the transaction.   Now
we have to consider whether this agreement necessarily implies
that the plaintiff took the note by purchase, so as to be absolute
owner, rather than as collateral.   The words near the beginning
of the agreement, " when the note is paid, I agree to convey to
Alfred A. Marcus & Son," etc., may naturally refer to a payment
by Shepard, the maker, and do not necessarily imply a duty on
the part of the indorsers to pay it in full.   So the words at the

end of the agreement, " when note is paid, credit to be given of $1,075," may reasonably be held to mean " when note is paid by Shepard, credit to be given to Marcus & Son of $1,075." Payment by Shepard is consistent with the words and meaning. Since the plaintiff held the note, if Shepard wished to pay it in full he would make the payment to the plaintiff. Moreover, there are no words showing that the defendants agree to purchase the land on the terms specified. The agreement is solely on the part of the plaintiff. The signature of the defendants does not bind them to make a purchase any more than if it were a bond for a deed to which the obligee should add his signature. The court cannot put words into the agreement which are not there, for the purpose of binding the defendants to make the purchase, unless it is certain from the context that such words were omitted by mistake. It might well be that the plaintiff intended merely to give to the defendants an option. There is nothing to show that the defendants had ever seen or heard of the land before, or that they had any intention of binding themselves to purchase it. In order to bind them, not only is their signature necessary, but also apt words are necessary to show the obligation into which they entered. But even if their signature could be construed so as to import a contract to make the purchase, certainly it can bind them to no more than to make such purchase under the condition expressed in the writing. That condition is, " when the note is paid." The defendants might be willing to agree to take a conveyance of the land provided the note should be paid by Shepard, but not willing to. do so if they would have to raise the money themselves to pay for it. The note was not paid by Shepard. On the contrary, he went into insolvency, and the plaintiff received only fifteen per cent thereon. The defendants are not bound to raise money from their own means to pay $1,075 for the equity of redemption of the land. The plaintiff cannot compel the defendants to pay the note, in order to put himself in a position where he will be bound to make the conveyance, and the defendants bound to accept it. In any view which can be taken of the written agreement, in the opinion of a majority of the court, it is not inconsistent with the defendants' contention that the note was taken by the plaintiff as collateral.

If so taken as collateral, the plaintiff's right to recover upon it is limited to the balance due to him upon his loan of $675 to them. *Third National Bank* v. *Eastern Railroad,* 122 Mass. 240.

The discharge of Shepard under the composition proceedings, though assented to by the plaintiff, does not cut off the plaintiff's claim against the defendants as indorsers.     Sts. 1884, c. 236, § 9; 1885, c. 353.    Pub. Sts. c. 157, § 85.

*Exceptions sustained.*